UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SEAN COLVIN,

                          Plaintiff,

v.                                              3:15-CV-1033
                                                (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LACHMAN, GORTON LAW FIRM                         PETER A. GORTON, ESQ.
  Counsel for Plaintiff
1500 E. Main St.
P.O. Box 89
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.                      VERNON NORWOOD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 19.)  This case has proceeded in accordance with General

Order 18.

Currently before the Court, in this Social Security action filed by Sean Colvin

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 10, 11, 13, 15.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1968.  (T. 23.)  He completed a two year college program. (T. 275.)  Generally, Plaintiff's alleged disability consists of back/neck/leg injury, diabetes, Crohn's disease, loss of digits, and post-traumatic stress disorder.  (T. 274.) His alleged disability onset date is March 18, 2010. (T. 269.)  His date last insured is March 31, 2013.  (T. 270.)  He previously worked as a group support staff, school monitor, and support staff for assisted living.  (T. 23.)

### B.    Procedural History

On October 25, 2010, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 270.)  Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On March 9, 2012 and again on May 25, 2012, Plaintiff appeared before the ALJ, Bruce S. Fein. (T. 60-91, 92-101.)  On August 24, 2012, ALJ Fein issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 110-126.)  On August 16, 2013, the Appeals Council ("AC") granted Plaintiff's request for review.  (T. 127-131.)  On December 6, 2013, Plaintiff appeared before ALJ Fein.  (T. 886-913.)  On April 8, 2014, ALJ Fein issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 9-32.)  On July 21, 2015, the AC denied Plaintiff's request for review, rendering

the ALJ's April 2014 decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 14-25.) First, the ALJ found that Plaintiff met the insured status requirements through March 31, 2014 and Plaintiff had not engaged in substantial gainful activity since March 18, 2010. (T. 14.) Second, the ALJ found that Plaintiff had the severe impairments of Crohn's disease/irritable bowel syndrome; post partial amputation of left (non-dominant) index, middle, and ring fingers; lumbar spine degenerative disc disease; anxiety disorder; and a depressive disorder. (T. 14-16.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 16-18.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand/walk six hours in an eight-hour day, sit six hours in an eight-hour day with the opportunity to alternate between a sitting and standing position at regularly scheduled breaks and lunch periods, and occasionally climb, balance, stoop, kneel, crouch, crawl, and handle objects with his left non-dominant hand. He cannot perform any fingering with his left non-dominant hand. [Plaintiff] is limited to simple, routine, and repetitive tasks. He can perform a low stress job, defined as having only occasional decision-making being required, only occasional changes in the work setting, and occasional judgment being required.

(T. 18.) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 23-24.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes five separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ did not properly assess Plaintiff's limitations to work pace and ability to engage in continuing and systematic employment. (Dkt. No. 10 at 9-12 [Pl.'s Mem. of Law].) Second, Plaintiff argues that he cannot meet the physical demands of light work. (*Id.* at 12-17.) Third, Plaintiff argues the ALJ failed to properly assess Plaintiff's learning disorder as a severe impairment or include the resulting limitations in the RFC determination. (*Id.* at 18-21.) Fourth, Plaintiff argues the ALJ's step five determination was not supported by substantial evidence. (*Id.* at 21.) Plaintiff also filed a supplemental brief. (Dkt. No. 12 [Pl.'s Supp. Mem. of Law].) Therein, Plaintiff makes the argument that the vocational expert ("VE") testimony confirmed that the Plaintiff cannot do either past relevant work or other work and that the ALJ's determination was erroneous. (*Id.* at 1-3.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues Plaintiff's learning disorder was not a severe impairment. (Dkt. No. 13 at 9-12 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ correctly assessed Plaintiff's RFC. (*Id.* at 12-16.) Third, and lastly, Defendant argues Plaintiff retained the RFC to perform work which existed in significant numbers in the national economy. (*Id.* at 16-20.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.*

*Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether

the ALJ applied correct legal principles, application of the substantial evidence standard

to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*,

615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla,"

and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v.

Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be

sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the

[Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In

other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

For ease of analysis, Plaintiff's arguments will be addressed out of order and in a consolidated manner.

### A.    The ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine whether Plaintiff has a severe impairment that significantly limits his physical or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  Plaintiff

bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a).

Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013).

Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).  The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe.  *McConnell v. Astrue,* 2008 WL 833968, at *2 (N.D.N.Y.2008) (citing *Coleman,* 895 F.Supp.at 53)).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v.*

*Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. §§ 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

At step two of the sequential process the ALJ determined that Plaintiff had the severe impairments of Crohn's disease/irritable bowel syndrome; post partial amputation of left (non-dominant) index, middle, and ring fingers; lumbar spine degenerative disc disease; anxiety disorder; and a depressive disorder. (T. 14-15.) The ALJ further determined that Plaintiff's impairments of hypertension, hyperlipidemia, diabetes, sleep apnea, GERD, obesity, polysubstance abuse in remission, learning disorder, and neck and right arm injury were non-severe. (T. 16.) The ALJ specifically concluded that Plaintiff's learning disorder was non-severe because despite the disorder Plaintiff completed high school in regular education and obtained two associates degrees. (T. 16.)

Plaintiff argues that the ALJ erred in his determination that Plaintiff's learning disorder was a non-severe impairment. (Dkt. No. 10 at 18-21 [Pl.'s Mem. of Law].)

However, for the reasons stated herein and further outlined in Defendant's brief, the ALJ did not err in his step two determination and further any error would be harmless.

Here, the ALJ properly determined that Plaintiff's learning disorder was non-severe because it did not impose more than minimal limitations on Plaintiff's ability to perform basic mental work activities. (T. 16.) Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6), *see also* SSR 85-15 (S.S.A. 1985).

Substantial evidence in the record supports the ALJ's determination that Plaintiff's learning disorder was non-severe. Despite being diagnosed with a learning disorder, Plaintiff completed high school in general education classes and was able obtain two associates degrees. (T. 66, 275, 440.) Further, Plaintiff was able to work at a substantial gainful employment level despite his learning disorder. (T. 276, 282, 319.) At the hearing, the VE testified that under the DOT Plaintiff's past work experience was classified as semi-skilled and skilled employment. (T. 900.) Plaintiff testified that he could follow written and spoken instructions, had no problems getting along with bosses or other authority figures, and could usually finish what he stated. (T. 307.) Therefore, Plaintiff has failed to meet his burden to demonstrate that his learning disorder significantly limited his ability to perform basic work activities.

Any error the ALJ may have made at step two would be harmless because the ALJ found that Plaintiff had severe impairments at step two and he discussed Plaintiff's mental impairments in his RFC analysis. (T. 21-23.) The ALJ determined that based on

the evidence in the record, Plaintiff could essentially perform simple, routine, unskilled work. (T. 18.) Therefore, any error would be harmless because the ALJ found other severe impairments and proceeded with the sequential process. *See Reices-Colon,* 523 F. App'x at 798. It is recommended that the ALJ's step two determination be upheld.

### B. The ALJ's RFC Determination

Plaintiff's RFC is the most he can still do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making an RFC determination, the ALJ will base his determination on an assessment of all the relevant evidence in the case record. *See id.* Further, Plaintiff's RFC is his maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis. *See id.* at §§ 404.1545(b)-(c), 416.945(b)-(c). "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009).

### i.) Physical RFC

In formulating his physical RFC determination, the ALJ relied on medical opinion evidence in the record and Plaintiff's testimony as outlined herein. (T. 19-21.)

On January 17, 2011, Plaintiff underwent a consultative examination by Justine Magurno, M.D. (T. 432-437.) On examination, Dr. Magurno observed that Plaintiff was in no acute distress. (T. 434.) She observed that Plaintiff's gait was "slightly left antalgic," he could toe walk normally, heel walking was with difficulty, squat of 1/3 full, his stance was normal, he used no assistive devices, and he was able to change for the exam and get on and off the exam table without assistance. (*Id.*)

Dr. Magurno observed that Plaintiff's cervical spine flexion, rotation right and lateral flexion right was decreased. (T. 435.) She observed that Plaintiff's lumbar spine flexion was limited to 60 degrees. (*Id.*) Plaintiff had negative straight leg raises ("SLR") bilaterally. (*Id.*) Plaintiff had full range of motion in his shoulders; however, internal rotation of the right shoulder was limited to 20 degrees and Plaintiff complained of pain with range of motion. (*Id.*) Plaintiff had full range of motion in his elbows, forearms, and wrists. (*Id.*) Dr. Magurno noted loss of digits on Plaintiff's left hand. (*Id.*) Plaintiff had 5/5 strength in his upper and lower extremities, except 4/5 strength his left hamstring. (*Id.*) Dr. Magurno noted Plaintiff had 5/5 grip strength in his right hand and 4/5 in his left. (T. 436.) X-rays of Plaintiff's lumber and cervical spine were negative. (*Id.*)

In a medical source statement, Dr. Magurno opined that Plaintiff had "marked limitations for squatting, lifting, and carrying; moderate for pushing, pulling, bending, walking, and standing; mild for reaching and sitting due to anticipated pain, mild for fine motor activity on the left." (T. 436.)

On May 25, 2012, Timothy Roche, D.O., a treating physician, completed a "Questionnaire." (T. 655-659.) Dr. Roche stated that the limitations he imposed were based on Plaintiff's degenerative disc disease, both cervical and lumbar, and diabetes. (T. 658.) In general, Dr. Roche opined that Plaintiff required complete freedom to rest frequently without restriction. (T. 655.) Dr. Roche indicated that Plaintiff would have a "substantial number of absences from work." (*Id.*)

Regarding Plaintiff's exertional limitations, Dr. Roche opined that Plaintiff could sit for less than six hours in an eight hour workday and needed to alternate positions

between sitting and standing. (T. 655.)[1] Dr. Roche opined that Plaintiff was unable to stand for two hours out of an eight hour workday. (T. 656.)[2] Dr. Roche checked the box indicating Plaintiff could lift up to five pounds for three to eight hours per day. (*Id.*) Dr. Roche checked the boxes indicating that Plaintiff could lift and carry five to ten pound up to three hours a day and also over ten pounds up to three hours a day. (*Id.*)

On May 24, 2012, Plaintiff's treating source, Leslie Bank, M.D., completed a "Questionnaire." (T. 646-647.) The questionnaire asked whether Plaintiff's medical condition would require him to have unlimited access to the bathroom and Dr. Banks checked the box "yes." (T. 646.) The questionnaire asked whether Plaintiff's need to use the bathroom could be accommodated in a job which allowed for a break in the morning, a break in the afternoon and a break for lunch and Dr. Banks checked the box "no." (*Id.*) Dr. Bank checked the box "yes" indicating Plaintiff's need to use the bathroom would be urgent and immediate. (*Id.*)

On October 8, 2013, Cori Pane, FNP, completed a "Questionnaire." (T. 698-699.) Regarding rest periods, Nurse Pane check the statement "[n]ot even more [than] one (1) ten (10) minute rest period per hour would be enough. Patient requires more than one (1) ten (10) minutes rest period and complete freedom to rest frequently without restriction." (T. 698.) Nurse Pane indicated Plaintiff would have a substantial

---

[1]     The Questionnaire provided to Dr. Roche offered the following options regarding Plaintiff's ability to sit: 1) can sit for six or more hours out of an eight hour day, 2) can sit for less than six hours out of an eight hour day, 3) can sit for less than six hours out of an eight hour day and needs to alternate positions between sitting and standing, and 4) can sit for six hours out of an eight hour day but must alternative between sitting and standing. (T. 655.)

[2]     The Questionnaire provided to Dr. Roches offered the following options regarding Plaintiff's ability to stand: 1) can stand for six hours out of an eight hour day, 2) can stand for at least two hours out of an eight hour day, and 3) is not able to stand for two hours out of an eight hour day. (T. 656.)

number of absences from work. (*Id.*) Regarding the effects of pain and side effects of medications, Nurse Pane indicated Plaintiff would have moderate limitations in his ability to concentrate and sustain work pace. (*Id.*)

Nurse Pane provided an opinion regarding Plaintiff's exertional limitations. She stated that Plaintiff could sit for approximately four hours in an eight hour workday. (T. 699.) She opined that Plaintiff would need to change positions every hour. (*Id.*) Nurse Pane stated Plaintiff could stand/walk for approximately four hours in an eight hour workday. (*Id.*) She opined that Plaintiff could lift and carry up to ten pounds for three to eight hours a day. (*Id.*)

In formulating his physical RFC determination the ALJ afforded Dr. Magurno's opinion "some weight" reasoning that she only examined Plaintiff on one occasion and her opinion was not entirely supported by her objective findings or Plaintiff's record. (T. 19.) The ALJ afforded Dr. Bank's statement "limited weight." (T. 20.) The ALJ reasoned that Dr. Bank's statement was not supported by Plaintiff's treatment history or notes and that Plaintiff often had no gastrointestinal complaints. (*Id.*) The ALJ afforded Dr. Roche's statement "limited weight," reasoning the opinion was not supported by the doctor's treatment notes, Plaintiff's treatment history, or objective medical evidence. (*Id.*)

Plaintiff argues that the ALJ erred in his assessment of Dr. Roche's opinion. (Dkt. No. 10 at 16-17 [Pl.'s Mem. of Law].) However, substantial evidence supported the ALJ's determination to afford Dr. Roche's opinion less than controlling weight.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Here, the ALJ concluded that Dr. Roche's limitations were not supported by the doctor's treatment notations or the record. (T. 20.) Where a treating physician's treatment notes do not corroborate the physician's restrictive limitations, and were contradicted by other medical evidence, the Second Circuit has held that an ALJ may properly decline to accord that treating provider's opinion significant weight. *Kennedy v. Astrue*, 343 F. App'x. 719, 721 (2d Cir. 2009). Indeed, treatment notations documented no motor weakness, intact balance and gait, intact coordination, "mild" range of motion restrictions, and consistently noted Plaintiff was in no acute distress. (T. 422-430, 489-540, 575-645, 708-815.)

Further, Dr. Roche's limitations were inconsistent with Plaintiff's statements to providers. For example, Plaintiff reported working out at a gym, although he was

advised against running on a treadmill. (T. 669.) Dr. Magurno's opinion regarding

Plaintiff's ability to sit and stand further contradicted Dr. Roche's opinion. (T. 436, 655-

656.) Plaintiff asserts that Dr. Magurno's opinion cannot constitute substantial contrary

evidence. (Dkt. No. 10 at 14 [Pl.'s Mem. of Law].) However, the Second Circuit has

held that the opinion of a treating physician is not binding if it is contradicted by

substantial evidence, and a consulting physician report may constitute such evidence.

*See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983); *see also Snyder v.*

*Colvin*, No. 15-CV-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016). Therefore,

the ALJ's determination to afford Dr. Roche's opinion less than controlling weight was

supported by substantial evidence in the record.

      Plaintiff also argues the ALJ's RFC determination was not supported by

substantial evidence because he "rejected" all the medical opinions in the record and

because there was no medical opinion in the record to support his RFC determination.

(Dkt. No. 10 at 13 [Pl.'s Mem. of Law].)

      As an initial matter, an ALJ does not necessarily need to have a medical opinion

in order to make an RFC determination. Where an ALJ rejects a treating source's

medical assessment the ALJ's RFC determination may still be supported by substantial

evidence where the record contains sufficient evidence from which an ALJ can assess

Plaintiff's RFC. *Monroe v. Comm'r of Soc. Sec.*, No. 16-1042-CV, 2017 WL 213363, at

*3 (2d Cir. Jan. 18, 2017) (internal citations omitted). In *Monroe*, the Second Circuit

concluded that although the ALJ rejected a treating source's medical opinion, the ALJ's

RFC determination was supported by the doctor's treatment notations which included

descriptions of the plaintiff's symptoms and contemporaneous medical assessments of the plaintiff's functional capacity. *Monroe*, 2017 WL 213363 at *3.

In addition, although no one opinion from a treating provider or the consultative examiner may "perfectly correspond" with the ALJ's RFC determination, the ALJ is entitled to rely on the medical evidence as a whole in formulating Plaintiff's RFC. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.") Therefore, contrary to Plaintiff's assertion, the ALJ did not commit legal error in formulating his RFC determination. (Dkt. No. 10 at 13 [Pl.'s Mem. of Law].)

Plaintiff specifically argues that the medical evidence did not support the ALJ's determination that Plaintiff retained the ability to perform the sitting and standing requirements of light work. (Dkt. No. 10 at 14-15 [Pl.'s Mem. of Law].) The full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight hour workday. SSR 83-10, 1983 WL 31251. Here, the ALJ's determination that Plaintiff could stand/walk for six hours in an eight hour workday and sit six hours in an eight hour workday, with the opportunity to alternate between sitting and standing at regularly scheduled breaks, was supported by substantial evidence in the record.

The ALJ relied on the medical opinion of Dr. Magurno as well as treatment notations in the record. Dr. Magurno opined that Plaintiff had mild limitations in his ability to sit and moderate limitations in his ability to stand/walk. (T. 436); *see Lewis v. Colvin*, 548 F. App'x 675, 677 (2d Cir. 2013) (the ALJ's determination that plaintiff could

perform light work was supported by consultative examiner's assessment of "mild limitations for prolonged sitting, standing, and walking," and direction that plaintiff should avoid "heavy lifting, and carrying").

The ALJ outlined treatment notations which indicated that Plaintiff had reasonable motor strength with no focal myotomal weakness and his muscle bulk and tone were within normal limits. (T. 19, *referring to* T. 654.) On May 7, 2012, Khalid Sethi, M.D. noted that Plaintiff's gait and strength were stable and "[f]or the most part his symptoms are quite bearable and tolerable" and Plaintiff "for the most part is doing reasonably well." (T. 652.) Plaintiff was to continue with physical therapy. (*Id.*) On examination, Plaintiff had mild restriction in range of motion in his back. (T. 649, 651, 675, 676, 678, 686, 690, 694.)

In addition, the ALJ relied on Plaintiff's activities of daily living. (T. 19.) Plaintiff acknowledged that he was able to clean, do dishes, iron, sweep, walk places, shop, prepare and cook food, meet his own personal needs, take his children to and from school, and use the computer. (T. 301-305, 434, 442.)

The ALJ's determination that Plaintiff retained the ability to sit for six hours and stand/walk six hours, with breaks, was supported by the medical evidence in the record including Dr. Magurno's opinion, treatment notations and Plaintiff's activities of daily living.

Plaintiff argues the ALJ failed to address the necessary frequency and length of anticipated bathroom breaks. (Dkt. No. 10 at 10-11 [Pl.'s Mem. of Law].) Although Dr. Bank opined that Plaintiff required unlimited access to the bathroom which would not be accommodated with a regular breaks, the ALJ properly afforded her opinion limited

weight because the opinion was not supported by Plaintiff's treatment history or treatment notes. (T. 20.) Dr. Bank noted that Plaintiff did not suffer from Crohn's, but had colitis, which resolved. (T. 836.) Dr. Bank noted Plaintiff had irritable bowel syndrome, but there had been no exacerbation of symptoms since starting medication. (*Id.*) Dr. Bank indicated that Plaintiff could follow with his primary care provided and no longer needed to see her on a regular basis. (T. 837.) The record consistently reported that Plaintiff had no gastrointestinal complaints. (T. 593, 598, 603, 609, 614, 620, 631, 637, 643, 710, 715, 721, 726, 737, 743, 749, 760, 765, 770, 781, 787, 793.) Therefore, substantial evidence supported the ALJ's determination to afford Dr. Bank's opinion limited weight.

In sum, although the ALJ's physical RFC did not perfectly mirror a medical source opinion, the RFC determination was supported by substantial evidence in the record including opinion evidence, treatment notations and Plaintiff's reported activities of daily living. Therefore, for the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's physical RFC determination be upheld.

### ii.)    Mental RFC Determination

In formulating his mental RFC determination, the ALJ relied on the medical source opinion provided by consultative examiner, Sara Long, Ph.D. (T. 22.) Dr. Long opined that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make

appropriate decisions, relate adequately with others, and adequately manage stress. (T. 442.)

Dr. Roche provided mental limitations as well. He opined Plaintiff's concentration and ability to sustain work pace were mildly impaired. (T. 656.) Dr. Roche indicated Plaintiff had "more [than] slight" limitations in his ability to: maintain attention and concentration for extended periods of time; perform activities within a schedule, maintain regular attendance and/or be punctual with in customary tolerances; sustain an ordinary routine without special supervision; and interact appropriately with the general public. (T. 657-658.) He opined Plaintiff had "medium" limitations in his ability to: complete a normal workday; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers; respond appropriately to ordinary stressors; and respond appropriately to changes in the work setting. (T. 658.) Dr. Roche completed an addendum on October 10, 2013, in which he indicated that Plaintiff's condition and limitations were the same as in his May 25, 2012 statement. (T. 707.)

The ALJ afforded Dr. Roche's opinion limited weight, reasoning that his opinion was not supported by his treatment notes, not supported by Plaintiff's treatment history, and inconsistent with Plaintiff's activities. (T. 22.)

Plaintiff argues that the ALJ erred in his mental RFC determination because he failed to consider Dr. Roche's opinion, that Plaintiff had a 20-30% loss of function in completing a normal work day/week. (Dkt. No. 10 at 12 [Pl.'s Mem. of Law].)

The ALJ's mental RFC determination was supported by substantial evidence in the record. The ALJ relied on Dr. Long's statement that Plaintiff could perform the basic

mental activities of unskilled work. It is well settled that an ALJ is entitled to rely upon

the opinions of both examining and non-examining State agency medical consultants,

since such consultants are deemed to be qualified experts in the field of social security

disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b),

416.913(c), 416.27(e). Indeed, Plaintiff testified that he could follow written and spoken

instructions, had no problems getting along with bosses or other authority figures, and

could usually finish what he started. (T. 307.) Therefore, for the reasons stated herein,

and further outlined in Defendant's brief, it is recommended that the ALJ's RFC

determination be upheld because the ALJ did not err in affording limited weight to Dr.

Roche's mental limitations and the ALJ's mental RFC was supported by substantial

evidence in the record.

### C. The ALJ's Step Five Determination

At step five of the sequential process the ALJ determined that Plaintiff was

unable to perform his past relevant work; however, based on Plaintiff's RFC, age,

education and work experience, there were jobs that exist in significant numbers in the

national economy that Plaintiff could perform. (T. 24.) In making his determination, the

ALJ relied on VE testimony. At the hearing the VE testified that someone with Plaintiff's

age, education, work experience and RFC, could perform the requirements of interview

survey worker (DOT # 205-367.054), parking lot attendant (DOT # 915-473.010), and

ticket seller (DOT # 211-467.030). (T. 902-906.)

Plaintiff argues that he cannot perform the occupations provided by the VE

because those occupation require either frequent or constant reaching, handling, or

fingering. (Dkt. No. 12 at 1-3 [Pl.'s Suppl. Mem. of Law].)

Plaintiff's argument is unavailing. Plaintiff altered the ALJ's hypothetical from occasional handling with left non-dominant hand and no fingering with left non-dominant hand, to a much more limiting hypothetical of no frequent or constant reaching, handling, and fingering. (T. 906-907.) Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the VE that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553-1554 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record). Therefore, it is recommended that the ALJ's step five determination be upheld.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:        February 27, 2017

William B. Mitchell Carter
U.S. Magistrate Judge